UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LISA M. WARREN,
on behalf of T.M.W., an infant,

                              Plaintiff,

                -vs-                                    12-CV-00544-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                              Defendant.

---

APPEARANCES:       MYERS, QUINN & SCHWARTZ, LLP
                            (LEWIS L. SCHWARTZ, ESQ., of Counsel)
                            Buffalo, New York
                            Attorneys for Plaintiff

                            WILLIAM J. HOCHUL, JR.
                            United States Attorney, Western District of New York
                            (MICHAEL S. CERRONE, AUSA, of Counsel)
                            United States Attorney's Office
                            Buffalo, New York
                            Attorneys for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated November 14, 2013. Item 20.

Plaintiff Lisa M. Warren initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of Social Security

---

[1] At the time this action was filed, Michael J. Astrue was the Commissioner of Social Security, and was properly named in the complaint as the defendant under 42 U.S.C § 405(g). On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security, and is hereby substituted as the defendant in this action, pursuant to § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."), and Rule 25(d) of the Federal Rules of Civil Procedure. For continuity, the court will herein refer to Acting Commissioner Colvin as "Commissioner."

("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits made on behalf of her minor child, T.M.W. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, plaintiff's motion is granted, and the Commissioner's motion is denied.

## BACKGROUND

Plaintiff filed an application on January 31, 2008, for SSI benefits on behalf of T.M.W. (Tr. 157-60).[2] T.M.W. was born on October 7, 2000, and was 7 years old at the time the application was filed (Tr. 157). Plaintiff alleged that T.M.W. was disabled due to asthma, attention deficit hyperactive disorder (ADHD), possible schizophrenia, and child psychosis, with an onset date of September 1, 2005 (Tr. 175). Upon denial of the application at the initial level of agency review (Tr. 84-87), plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ") (Tr. 88-89). The hearing was held by video conference on September 27, 2010, before ALJ David S. Pang (Tr. 28-62). Plaintiff and T.M.W. testified at the hearing, and they were represented by attorney Lewis L. Schwartz, Esq., who is also serving as plaintiff's counsel in this action.

In a decision dated November 18, 2010, ALJ Pang found that T.M.W. was not disabled within the meaning of the Social Security Act (Tr. 67-79). Following the sequential evaluation process for determining disability for children, as outlined in the Social Security regulations at 20 C.F.R. § 416.924, the ALJ determined that T.M.W.'s impairments, while severe, did not meet, medically equal, or functionally equal the severity of any impairment

---

[2]Citations preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 4).

listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), necessary for a finding of eligibility for child's SSI benefits (*id.*).

Plaintiff filed a timely administrative appeal (Tr. 17-18), and on April 13, 2012, the ALJ's decision became the final determination of the Commissioner when the Appeals Council denied plaintiff's request for review (Tr. 1-5). Plaintiff then filed this action on June 11, 2012, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), and the parties now move for judgment on the pleadings under Fed. R. Civ. P. 12(c) (Items 10, 12).

In support of her motion, plaintiff contends that the ALJ failed to properly evaluate the opinion of a consulting psychologist; failed to consider evidence regarding the severity of T.M.W.'s bipolar disorder and its effect on her functioning in the six functional equivalence domains outlined at 20 C.F.R. § 416.926a(b)(1); and failed to properly assess the credibility of plaintiff's and T.M.W.'s hearing testimony.  *See* Item 13.  The Commissioner contends that the ALJ's determination is supported by substantial evidence, and should be affirmed.  *See* Item 11.

## DISCUSSION

**I.    Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or

misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, ___ F. App'x ___, 2013 WL 4750284, at *3 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*,

312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir.1994).

## II.     Standards for Determining Eligibility for Child's Disability Benefits

Under the Social Security Act, an individual under the age of 18 is entitled to SSI benefits when he or she has a medically determinable physical or mental impairment which results in marked and severe functional limitations and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  The regulations set forth a sequential process for the ALJ to follow in evaluating SSI claims for minor children.  *See* 20 C. F .R. § 416.924.  First, the ALJ must determine whether the child has engaged in substantial gainful activity.  If so, the child is ineligible for SSI benefits.  20 C.F.R. § 416.924(b).  If the child has not engaged in substantial gainful activity, the second step requires an evaluation of whether the child suffers from an impairment or combination of impairments that cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c).  If the child's impairment is severe, the ALJ then must determine whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. 20 C.F.R. § 416.924(d)(1).

If the ALJ determines that the child's impairment or combination of impairments does not meet or equal any listing, the ALJ must then assess whether the child's impairment(s) "functionally equal the listings" by considering how the child functions in terms of the following six "domains:"

>   (i) acquiring and using information;
>
>   (ii) attending and completing tasks;
>
>   (iii) interacting and relating with others;
>
>   (iv) moving about and manipulating objects;
>
>   (v) caring for oneself; and
>
>   (vi) health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i)-(vi). A finding of disability is warranted if a "marked" limitation is found in any two of the listed domains, or an "extreme" limitation in a single domain. 20 C.F.R. § 416.926a(a); see Ramos v. Barnhart, 2003 WL 21032012, at *8 (S.D.N.Y. May 6, 2003). A "marked" limitation exists when the impairment "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). An "extreme" limitation is an impairment which "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

In this case, the ALJ determined at step one of the sequential evaluation that T.M.W. had not engaged in substantial gainful activity at any time during the relevant period (Tr. 70). At step two, the ALJ reviewed the medical records and found that T.M.W. suffers from ADHD and asthma, causing "more than minimal functional limitations" sufficient to be considered "severe" impairments under 20 C.F.R. § 416.924(c) (id.). The ALJ also noted plaintiff's allegations of T.M.W.'s disability based on depression, schizophrenia, and child psychosis, but found insufficient medical evidence in the record with respect to these impairments to establish "the existence of a medically determinable impairment which lasts more than 12 months and causes more than a minimal functional

limitation as required under" the Social Security regulations and rulings (*id.*) (citing 20 C.F.R. § 461.913 and Social Security Ruling ("SSR") 06-03p).

Proceeding to step three, the ALJ found that T.M.W. did not have an impairment or combination of impairments that met or medically equaled any impairment in the Listings—with specific reference to listings 112.11 (ADHD) and 103.03 (asthma) (*id.*). As required by the regulations, the ALJ then evaluated T.M.W.'s limitations in terms of the six functional equivalence domains to determine whether they were functionally equivalent to any listed impairment, considering "all of the relevant evidence in the case record" including the objective medical evidence; opinions of treating and consultative sources; educational records and statements from teachers; and hearing testimony and other statements in the record regarding plaintiffs allegations as to the severity of T.M.W.'s symptoms (Tr. 70-79). Consequently, the ALJ found that T.M.W. was not disabled during the period at issue from January 31, 2008, the date her SSI application was filed[3] to November 18, 2010, the date of the ALJ's decision,[4] and was therefore not entitled to child's SSI benefits (Tr. 79).

Plaintiff contends that, in making his determination, the ALJ committed the following errors;

1. The ALJ failed to properly assess the weight to be given to the opinion of consulting psychologist Dr. Thomas Ryan;

2. The ALJ's findings at step two of the sequential evaluation process that T.M.W.'s bipolar disorder was not "severe," and at step three regarding the

---

[3]SSI benefits can not be paid any earlier than the month after the month in which the application is filed. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.501.

[4]An application remains in effect until the hearing decision is issued. 20 C.F.R. § 416.330.

>    extent of T.M.W.'s limitations in the domains of (a) acquiring and using information, and (b) interacting and relating with others, are not supported by substantial evidence;
>
> 3. The ALJ failed to properly assess the credibility of plaintiff and T.M.W.

Each of these contentions is now addressed in turn.

### III.   Evaluation of Medical Source Opinion Evidence

The Social Security regulations provide that, in determining eligibility for SSI benefits, the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, "[r]egardless of its source," including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the … physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d. Cir. 2004) (citing 20 C.F.R. § 416.927(c)).[5] Under these rules, the opinions of treating physicians as to the nature and severity of the claimant's impairments are generally given "more weight" than other medical source opinions, and "controlling weight" if based upon well-supported, medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence. 20 C.F.R. § 416.927(c)(2). This is because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical

---

[5] 20 C.F.R. § 416.927 was amended effective March 26, 2012, with the result that subsection (d) was re-designated as subsection (c), without substantive change.  With regard to this case, the ALJ's decision was issued before the effective date of the amendment, and the Appeals Council's ruling was issued after the effective date.  For continuity, the court will herein refer to 20 C.F.R. § 416.927(c), presently in effect.

evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* The regulations also specify that the Commissioner "will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [claimant's] treating source's opinion." *Id.*; *see also Halloran*, 362 F.3d at 32; *Schaal v. Apfel*, 134 F.3d 496, 503-04 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion).

The regulations further recognize that:

> State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence ….

20 C.F.R. § 416.927(e)(2)(i). Thus, the opinions of consulting sources "may constitute substantial evidence if they are consistent with the record as a whole." *Barringer v. Commissioner of Social Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996); SSR 96–6p). This is particularly so where the consultant directly examines the applicant. *See* 20 C.F.R. § 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.")

In this case, the ALJ's written decision reflects that he assessed the evidence in the record regarding medical source opinions as to the extent of T.M.W.'s impairments, with

particular focus on the report and opinion of Dr. Thomas Ryan, Ph.D., a state-licensed psychologist who performed a Mental Status Examination ("MSE") of T.M.W. at the Commissioner's request (Tr. 330-33). As indicated by his report, Dr. Ryan examined T.M.W. on September 2, 2008, and provided the following "Medical Source Statement:"

> [T.M.W.] demonstrates no significant limitation in her ability to attend to, follow, and understand age-appropriate directions, complete age-appropriate tasks, respond to changes in the environment, ask questions and request assistance in an age-appropriate manner, be aware of danger and take needed precautions. She has a significant limitation in her ability to maintain appropriate social behavior, learn in accordance to cognitive functioning, and interact appropriately with peers and adults.

Tr. 332. Dr. Ryan's diagnosis was ADHD and asthma. Tr. 332-33. He recommended counseling and parent effectiveness training, and his prognosis was "[f]air given her age and if she gets necessary supports." Tr. 333.

The ALJ stated in his decision that he accorded "great weight" to Dr. Ryan's assessment, finding it to be "generally consistent with the overall medical evidence" (Tr. 73). However, in his specific discussion regarding the limitations caused by T.M.W.'s impairments in the functional equivalence domains, the ALJ found that T.M.W. had "no limitation" in the domain of acquiring and using information (Tr. 74), and "less than marked" limitation in the domain of interacting and relating with others (Tr. 76). The ALJ offered no explanation as to how Dr. Ryan's report of T.M.W.'s "significant" limitations in her ability to maintain appropriate social behavior, learn in accordance to cognitive functioning, and interact appropriately with peers and adults—having been accorded great weight—could somehow support the findings of "no limitation" or "less than marked limitation" in the related domains of functioning.

In addition, the court's review of the record as a whole reveals substantial medical evidence provided by T.M.W.'s treating sources as to the nature and severity of her impairments, which should have triggered the ALJ's compliance with the requirement to consider the factors set forth at 20 C.F.R. § 416.927(c), and to give good reasons for the weight given to this evidence. For example, the record contains the report of an Initial Psychiatric Evaluation by nurse practitioner Gerald E. Turk, NP, BC, at Monsignor Carr Clinic on February 26, 2008 (Tr. 320-322). NP Turk noted that the evaluation was performed upon the recommendation of T.M.W.'s pediatrician, Dr. Rusi Udwadia, M.D., and therapist Shayna Gehl, M. Ed., to assess T.M.W.'s need for "pharmacological intervention to address her short attention span and behavioral issues" (Tr. 320). NP Turk reported that, upon evaluation, T.M.W. demonstrated that "[h]er insight is limited as she has little appreciation for the impact on her behaviors on herself and others," and that "[h]er judgement is also impaired which was evidenced by a history of impulsivity and unpredictability" (Tr. 321). NP Turk's diagnosis was ADHD and bipolar disorder (Tr. 322). The record also contains the 90-day follow-up evaluation reports of Dr. Norma C. Panahon, T.M.W.'s treating psychiatrist at the Monsignor Carr Clinic, dated May 4, 2008 (Tr. 319) and August 3, 2008 (Tr. 325), clearly stating the continuing diagnosis of ADHD and bipolar disorder.

In his decision, the ALJ referred to the Initial Psychiatric Evaluation report and acknowledged PA Turk's diagnosis of bipolar disorder, but stated that this was "the only evidence from Monsignor Carr" and that there were no further reports from the clinic in the record, or any further documentation of therapy or treatment for this impairment (Tr. 72). The ALJ therefore determined that the evidence was insufficient to establish that T.M.W.

suffered from medically determinable depression, schizophrenia, or child psychosis lasting more than 12 months and causing more than a minimal functional limitation, with no further discussion of the treating source evidence in the record as noted above. In the absence of any such discussion, the court cannot determine whether the ALJ or the Appeals Council evaluated the medical evidence of record in the light of correct legal standards. As stated by the Second Circuit, "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987), *quoted in Schaal*, 134 F.3d at 504.

Accordingly, the court finds that the ALJ failed to properly evaluate the evidence in the record from T.R.W.'s medical sources, including the reports and opinions of treating physicians and examining consultants, under the requirements of 20 C.F.R. § 416.927 and the pertinent case law.

**IV.    Severity**

Plaintiff also contends that the ALJ's finding at step two of the sequential evaluation process that T.M.W.'s bipolar disorder was not "severe" is not supported by substantial evidence. As noted above, for purposes of determining disability for children the regulations define a "severe" impairment as a medically determinable impairment or combination of impairments causing "more than minimal functional limitations …." 20 C.F.R. § 416.924(c). Under SSR 96-3p, the evaluation of whether an impairment is

"severe" at step two requires an assessment of the functionally limiting effects of the impairment on the child's ability to do "age-appropriate activities" or "to function independently, appropriately, and effectively in an age-appropriate manner." SSR 96-3p, 1996 WL 374181, at *1 (S.S.A. July 2, 1996); see *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 208-09 (W.D.N.Y. 2005).

In this case, the ALJ acknowledged that T.M.W. was diagnosed with bipolar disorder in February 2008 upon initial psychiatric evaluation at the Monsignor Carr Clinic, but found no further documentation of therapy or treatment for this impairment (Tr. 72). The ALJ therefore determined that the evidence was insufficient to establish that T.M.W. suffered from medically determinable depression, schizophrenia, or child psychosis lasting more than 12 months and causing more than a minimal functional limitation (Tr. 70). However, as already noted, the record before the court contains the reports of the 90-day psychiatric evaluations performed at the Monsignor Carr Clinic by Dr. Panahon in May and August 2008, along with other substantial medical evidence to establish that T.M.W. was diagnosed with bipolar disorder by several medical providers over a period lasting more than 12 months. *See, e.g.*, August 26, 2009 Report of Dr. Robyn Steinacher, D.O. (T.M.W. "most likely has [bipolar disorder, depression, or ODD] in addition to ADHD") (Tr. 383); July 23, 2010 Initial Psychiatric Evaluation RPA Turk (prescribing "Abilify[6] to address the patient's mood disturbance") (Tr. 427-428). In light of the information provided in these reports, the Commissioner's ultimate determination that there is insufficient medical

---

[6]Abilify is an antipsychotic medication used to treat the symptoms of psychotic conditions such as schizophrenia and bipolar disorder. It is also used to treat irritability and symptoms of aggression, mood swings, temper tantrums, and self-injury related to autistic disorder in children who are at least 6 years old. Http://www.drugs.com/abilify.html

documentation in the record to qualify T.M.W.'s bipolar disorder as a "severe" impairment cannot be found by this court to be supported by substantial evidence.

**V.      Functional Equivalence**

In similar fashion, the lack of substantial evidence to support the ALJ's evaluation of treating source evidence, or his consideration of the severity of T.M.W.'s bipolar disorder, has a direct bearing on the court's determination as to whether there is substantial evidence to support the ALJ's assessment of the effects of T.M.W.'s impairments in the six domains of functional equivalence.  Of particular concern is the ALJ's failure to explain how his indication of strong reliance on Dr. Ryan's consultative mental status examination report—which found that T.M.W. has significant limitations in her ability to maintain appropriate social behavior, learn in accordance to cognitive functioning, and interact appropriately with peers and adults—translated into findings of "no limitation" in the domain of acquiring and using information, and "less than marked" limitation in the domain of interacting and relating with others.

As explained by the Social Security Administration in its policy interpretation rulings, evaluation of a child's impairment in the domain of "acquiring and using information" requires the ALJ to "consider a child's ability to learn information and to think about and use the information." SSR 09-3p, 2009 WL 396025, at *2 (S.S.A. Feb. 17, 2009).  In the domain of "interacting and relating with others," the ALJ must "consider a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." SSR 09-5p, 2009 WL 396026, at *2 (S.S.A. Feb. 17, 2009).  In light of these requirements, the court finds it difficult to reconcile the

ALJ's strong reliance on Dr. Ryan's findings with his own assessment of T.M.W.'s limitations in terms of T.M.W.'s ability to function in these domains. Consequently, the court cannot find that the ALJ's functional equivalence assessment is supported by substantial evidence.

## VI.  Credibility

Finally, plaintiff contends that the ALJ failed to properly assess the credibility of Ms. Warren and T.M.W. with respect to their testimony at the hearing. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged. *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings."). The Commissioner has established a two-step process to evaluate a claimant's testimony regarding her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant. Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms. If the claimant's statements about [her] symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. § 416.929.

The Commissioner's policy interpretation ruling on this process states that:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations fo r evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).[7]

As the discussion above reveals, there is conflicting evidence in the record regarding the nature and extent of T.M.W.'s impairments, as well as the resulting limitations manifested in the six domains of functional equivalence. Accordingly, it was incumbent upon the ALJ to evaluate the credibility of plaintiff and T.M.W. with regard to their testimony and other statements of record pertaining to T.M.W.'s condition. Upon review of the ALJ's decision in this case, it is clear that he failed to comply with this requirement.

The ALJ mentioned the two-step credibility evaluation process described above (Tr. 71), but he never actually made any credibility assessment of T.M.W. or Ms. Warren with regard to their testimony, allegations, or statements about the intensity, persistence, or functionally limiting effects of T.M.W.'s symptoms. The ALJ summarized some of Ms. Warren's testimony, but he did not assess the credibility of her statements about T.M.W.'s

---

[7] The Ruling notes that, while the discussion regarding the process for assessing credibility refers only to SSDI claims under title II and SSI claims under title XVI by individuals 18 years or older, "the same basic principles with regard to determining whether statements about symptoms are credible also apply to claims of individuals under age 18 claiming disability benefits under title XVI." SSR 96-7p, 1996 WL 374186, at *1 n.1.

symptoms and their functional effects. In the absence of the required finding on credibility, the reviewing court is unable to assess the weight the ALJ gave to the witnesses' statements, or the reasons for that weight.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 12) is granted, and the Commissioner's motion (Item 10) is denied. The matter is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

So ordered.

\s\ John T. Curtin  
JOHN T. CURTIN  
United States District Judge

Dated:   January 15, 2014
p:\pending\2013\12-544.ssa.dec18.2013